**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRYSTAL SEENEY,<br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, SCI-GRATERFORD, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>NO. 13-1081 |

**July 10, 2014** **Anita B. Brody, J.**

**MEMORANDUM**

Plaintiff Crystal Seeney brings suit against the Commonwealth of Pennsylvania, Department of Corrections, SCI-Graterford ("Commonwealth"), Michael Wenerowicz, Diana Salkovitz, and Barbara Kalinowsky. Seeney alleges that all of the Defendants violated the Rehabilitation Act ("RA"), 29 U.S.C. § 794 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Additionally, Seeney alleges that Defendants Wenerowicz, Salkovitz, and Kalinowsky violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1] I exercise federal question jurisdiction over Seeney's claims pursuant to 28 U.S.C. § 1331. Defendants move for summary judgment. For the reasons set forth below, I will grant Defendants' motion for summary judgment in part and deny it in part.

## I. BACKGROUND[2]

On August 25, 2008, Plaintiff Crystal Seeney began her employment as a Clerk Typist 2 with the Pennsylvania Department of Corrections ("PDOC"). P's Ex. 1 at 16. Seeney was a full-

[1] In her Complaint, Seeney brought ADA claims against the Commonwealth. However, I granted the Commonwealth's motion to dismiss the ADA claims brought against it. *See* ECF No. 17.

[2] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (alteration in original) (internal quotation marks omitted).

time employee, working eight hour days. *Id.* at 24. In October 2009, Seeney was diagnosed with rheumatoid arthritis. *Id.* at 25. Following the diagnosis, Seeney applied for up to twelve weeks of intermittent leave under the FMLA. *Id.* The PDOC granted Seeney's first request for intermittent FMLA leave. On October 6, 2009, Seeney began using her first intermittent FMLA leave. D's Ex. 3. Despite medical treatment, Seeney's condition continued to affect her attendance at work. By October 2010, Seeney had used more than twelve weeks of intermittent leave. *Id.* On May 14, 2011, Seeney attempted to take a second intermittent FMLA leave. However, on June 6, 2011, Seeney received a letter from the PDOC, informing her that as of May 14, 2011 her leave would be without benefits.[3] P's Ex. 1 at P-13.

Seeney missed many days of work because she was experiencing flare ups of her rheumatoid arthritis. *Id.* at 38, 45. Seeney's doctors sent numerous letters explaining the medical reasons for Seeney's absences. *Id.* at P-22 to P-30. On April 27, 2011, and again on June 1, 2011, Seeney filed a Request for Accommodation for her disability. *Id.* at P-32, P-37. Attached to each of Seeney's accommodation requests was a Health Care Provider Questionnaire filled out by one of Seeney's doctors. *Id.* In each questionnaire, a doctor provided possible accommodations that he believed would enable Seeney to return to work and perform the essential functions of her job. *Id.* The PDOC denied Seeney's requests for accommodation. *Id.* at P-36.

On March 27, 2012, the PDOC terminated Seeney for "Unacceptable Attendance." *Id.* at P-21.

[3] Defendants allege that Seeney applied for her second FMLA leave in June of 2011. Ds' Mot. 10. This allegation is unsupported by the record. Rather, the record reflects that Seeney sought additional leave beginning May 14, 2011. *See* P's Ex. 1 at P-13.

## II. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Defendants move for summary judgment on Seeney's failure to accommodate claims under the ADA and RA, and her FMLA interference claim. Because Defendants do not address Seeney's retaliation claims under the ADA and RA, Seeney may move forward with these claims without further discussion.[4]

### 1. ADA and RA Failure to Accommodate Claims

Seeney brings discrimination claims under the ADA and RA, alleging that Defendants failed to accommodate her disability. Defendants move for summary judgment on Seeney's failure to accommodate claims because they argue she cannot establish a prima facie case of discrimination.

To establish a prima facie case of discrimination under the ADA and RA, a plaintiff must show: "(1) he is a disabled person within the meaning of the ADA [and RA]; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (ADA claim); *accord Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996) (applying same prima facie elements to a claim under the RA).[5] Defendants concede that Seeney is disabled, but argue that she cannot establish elements two or three of her prima facie case.

---

[4] In her Complaint, Seeney devotes Count III to violations of the RA. Although Seeney does not specifically allege in Count III that the PDOC failed to accommodate her and retaliated against her in violation of the RA, she states that the "[t]he foregoing conduct by Defendant constitutes unlawful discrimination under the Rehabilitation Act." Compl. ¶ 49. The foregoing conduct alleged by Seeney in the factual background and ADA Counts I and II is that the PDOC failed to accommodate her disability and retaliated against her for seeking an accommodation. It can be inferred from the foregoing conduct that Seeney is bringing both failure to accommodate and retaliation claims under the RA, especially given that the requirements for these claims under the RA and ADA are identical. *See infra* note 5.

[5] "The Rehabilitation Act expressly makes the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, applicable to federal employers and to employers receiving federal funding." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (citing 29 U.S.C. § 791(g)). Thus, the

**A. Employee Otherwise Qualified to Perform the Essential Functions of the Job**

Whether a plaintiff can establish element two of a prima facie case—she is otherwise qualified to perform the essential functions of the job—is a two part inquiry: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (citing 29 C.F.R. § 1630.2(n)). "The determination of whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit." *Id.*

Defendants argue that because Seeney's position was Clerk Typist 2 and her disability prevented her from typing that she was not a "qualified individual." Ds' Mot. 13-14. At the time the PDOC hired Seeney as a Clerk Typist 2, it determined that she was qualified for the position. Thus, Seeney has met the first part of the inquiry. Defendants do not address whether Seeney has met the second part of the inquiry. Defendants do not argue that typing was an essential function of the job, and that Seeney could not perform this essential function with or without reasonable accommodation. Thus, Defendants have not met their initial burden of moving for summary judgment on this basis. However, even if Defendants had moved for summary judgment on this basis, a genuine dispute of material fact exists as to whether typing is an essential function of the Clerk Typist 2 position, and if it is an essential function, whether Seeney could perform this function with or without reasonable accommodation.[6]

---

requirements for claims under the ADA and the RA are identical. The RA is applicable to the Commonwealth because the Commonwealth and its Corrections Department receive federal funding.

[6] The record reflects that Seeney had the position of Clerk Typist 2 for the entire time she worked for the PDOC. When Seeney worked as a Clerk Typist 2 in the Treatment Department, she spent 70% of her time typing. P's Ex. 1 at 40. However, when she worked as a Clerk Typist 2 in the Business Office, she

**B. Adverse Employment Action**

Defendants also contend that Seeney cannot establish that she suffered an adverse employment action as a result of discrimination, the third required element of her prima facie case. "[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (internal quotation marks omitted). "Adverse employment decisions . . . include refusing to make reasonable accommodations for a plaintiff's disabilities." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004). Under the ADA and RA, "an employer discriminates against a qualified individual with a disability when the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (alteration in original) (quoting 42 U.S.C. § 12112(b)(5)(A)). "Reasonable accommodation further includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith, under what has been termed a duty to engage in the interactive process . . . ." *Williams*, 380 F.3d at 761 (citation omitted) (internal quotation marks omitted).

Seeney provides evidence that Defendants failed to accommodate her disability and that her termination for unacceptable attendance may have resulted from her numerous absences that could have been prevented if she were granted a reasonable accommodation. Both the failure to make reasonable accommodation for a disabled employee and the termination of an employee because of her disability are adverse employment actions. I will deny Defendants' motion for

---

did no typing work. *Id.* at 17-18, P-12, P-35. Moreover, the record reflects that Seeney "could do some typing." *Id.* at 57.

summary judgment on Seeney's ADA and RA failure to accommodate claims because there are genuine disputes of material fact.

### 2. FMLA Interference Claim

Seeney brings an FMLA interference claim against Defendants, alleging that Defendants interfered with her right under the self-care provision of the FMLA to take leave for her serious health condition. Defendants raise two separate grounds for dismissal of Seeney's FMLA interference claim. Defendants argue that summary judgment should be granted in favor of all Defendants on this claim because Seeney is not an eligible employee under the FMLA. The Commonwealth Defendant argues that the claim against it should be dismissed because the Commonwealth is immune from suits for monetary damages under the self-care provision of the FMLA.

#### A. Eligible Employee Entitled to Benefits

Defendants argue that Seeney was not an eligible employee entitled to benefits under the FMLA. Seeney claims that she was an eligible employee, and that Defendants interfered with her right to take FMLA leave on May 14, 2011 when they denied her self-care leave.[7]

Under the FMLA "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir.

---

[7] In her response to Defendants' motion for summary judgment, Seeney also argues that Defendants retaliated against her for taking FMLA leave. However, Seeney only pled in her Complaint that "[t]he foregoing conduct by Defendant constitutes a violation of the FMLA, in that Defendant failed to provide Plaintiff with her entitled leave under the FMLA." Compl. ¶ 54. Seeney cannot argue a claim for FMLA retaliation because she failed to plead an FMLA retaliation claim in her Complaint.

2007). An employee is only entitled to benefits if s/he is an eligible employee. 29 U.S.C. § 2612(a)(1). "The term 'eligible employee' means an employee who has been employed--(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Defendants argue that Seeney cannot succeed on her FMLA interference claim because she did not work the requisite 1,250 hours within the past 12-month period. Although Seeney was absent quite frequently, she was a full-time employee who worked eight hour days. Despite Seeney's absences in the twelve months prior to May 14, 2011,[8] it appears that Seeney still managed to work approximately 1,500 hours. Thus, Seeney was an eligible employee entitled to benefits under the FMLA. I will deny Defendants' motion for summary judgment as to Seeney's FMLA interference claim on this basis.

**B. Commonwealth Immunity**

The Commonwealth Defendant argues that Seeney's monetary damages suit against it for violation of the self-care provision of the FMLA is barred by the Eleventh Amendment. "A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages . . . ." *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1333 (2012). Therefore, the Commonwealth is generally immune from suit. There are, however, two exceptions to this principle: (1) Congress may abrogate the States' immunity as an exercise of its powers under § 5 of the Fourteenth Amendment; and (2) a State may waive its immunity in federal court. *Id.*

---

[8] Plaintiff's Exhibit 1 provides a record of Seeney's absences. *See* P's Ex. 1 at 42, 61, 64, 65, 67, P-22, P-24, P-25, P-27, P-28.

**i. Abrogation**

Pursuant to § 5 of the Fourteenth Amendment, Congress may abrogate the States' immunity in order "to remedy and deter violations of rights guaranteed by § 1." *Id.* (internal quotation marks omitted). Section 1 of the Fourteenth Amendment provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. "Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 by enacting appropriate legislation." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 365 (2001) (internal quotation marks omitted). In order to validly abrogate the States' immunity from suit, "Congress must tailor legislation enacted under § 5 to remedy or prevent conduct transgressing the Fourteenth Amendment's substantive provisions." *Coleman*, 132 S. Ct. at 1333 (internal quotation marks omitted). The Equal Protection Clause is one of the substantive provisions of § 1 of the Fourteenth Amendment. Gender-based discrimination violates the Equal Protection Clause absent a showing that the gender-based classification "serve[s] important governmental objectives and the discriminatory means employed [are] substantially related to the achievement of those objectives." *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 728 (2003) (internal quotation marks omitted); *see also Kirchberg v. Feenstra*, 450 U.S. 459-60 (1981).

There are two types of provisions that enable an employee to take leave under the FMLA: (1) the family-care provisions that enable an employee to take leave for reasons related to family care; and (2) the self-care provision that enables an employee to take leave for his or her own serious medical condition. *Coleman*, 132 S. Ct. at 1332. Whether Congress validly abrogated

the States' immunity from suit under the FMLA depends on which provision of the FMLA applies to an employee's leave request.

In *Hibbs*, the Supreme Court held that Congress validly abrogated the States' immunity from suit for violations the family-care provision of the FMLA that enables employees to take leave for the care of a spouse, child, or parent with a serious health condition.[9] 538 U.S. at 721. "That holding rested on evidence that States had family-leave policies that differentiated on the basis of sex and that States administered even neutral family-leave policies in ways that discriminated on the basis of sex." *Coleman*, 132 S. Ct. at 1332. "In sum, the States' record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits [was] weighty enough to justify the enactment of prophylactic § 5 legislation." *Hibbs*, 538 U.S. at 735.

In *Coleman*, the Supreme Court again addressed the validity of Congress' abrogation of the States' immunity from suit under the FMLA, but this time it considered the self-care provision. 132 S. Ct. at 1332. In contrast to the family-leave provision, the Court found that Congress created the self-care provision "[w]ithout widespread evidence of sex discrimination or sex stereotyping in the administration of sick leave," and concluded that "the congressional purpose in enacting the self-care provision is unrelated to those supposed wrongs." *Id.* at 1335. "The legislative history of the self-care provision reveals a concern for the economic burdens on the employee and the employee's family resulting from illness-related job loss and a concern for discrimination on the basis of illness, not sex." *Id.* The Court held that the self-care provision is not a valid abrogation of the States' immunity from suit because "what the family-care provisions have to support them, the self-care provision lacks, namely evidence of a pattern of

[9] Specifically, *Hibbs* addressed whether monetary damages could be recovered from the State for violations of 29 U.S.C. § 2612(a)(1)(C).

state constitutional violations accompanied by a remedy drawn in narrow terms to address or prevent those violations." *Id.* at 1334. *Coleman* thus precludes the argument that Seeney may sue the Commonwealth for monetary damages because Congress abrogated the States' immunity from suit under the self-care provision of the FMLA.

**ii. Waiver**

The test for determining whether a state has waived its sovereign immunity is stringent:

> A State's consent to suit must be unequivocally expressed in the text of the relevant statute. Only by requiring this clear declaration by the State can we be certain that the State in fact consents to suit. Waiver may not be implied. For these reasons, a waiver of sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.

*Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (citations omitted) (internal quotation marks omitted).

Seeney contends that she may sue the Commonwealth for monetary damages under the self-care provision of the FMLA because the Commonwealth waived its sovereign immunity, pursuant to the Civil Rights Remedies Equalization Act, , 42 U.S.C. § 2000d-7, when it accepted federal funding for the PDOC.[10] The Civil Rights Remedies Equalization Act, 42 U.S.C. § 2000d-7, provides:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], *or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance*.

42 U.S.C. § 2000d-7(a)(1) (emphasis added). Seeney argues that "Congress intended the self-care provision to prohibit discrimination." P's Resp. 26. She asserts that the self-care provision falls within the residual clause of § 2000d-7 and waives the Commonwealth's immunity because

[10] It is undisputed that the Commonwealth and its Corrections Department receive federal funding.

it is a "provision[] of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1).

In *Sossamon*, the Supreme Court addressed whether Texas, pursuant to the residual clause of § 2000d-7, had waived its sovereign immunity to suits for money damages under Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1. 131 S. Ct. at 1662. Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ." 42 U.S.C. § 2000cc-1(a). The Court held that Texas had not waived its immunity because § 3 of RLUIPA "is not unequivocally a 'statute prohibiting discrimination'" within the meaning of the residual clause of § 2000d-7. *Sossamon*, 131 S. Ct. at 1662. In reaching this holding, the Court explained:

> The text of § 3 does not prohibit "discrimination"; rather, it prohibits "substantial burden[s]" on religious exercise. . . . A waiver of sovereign immunity must be strictly construed, in terms of its scope, in favor of the sovereign. We cannot say that the residual clause clearly extends to § 3; a State might reasonably conclude that the clause covers only provisions using the term "discrimination."

*Id.* (citation omitted) (internal quotation marks omitted).

Similar to § 3 of RLUIPA, the text of the self-care provision does not prohibit "discrimination"; rather, it permits an eligible employee to take FMLA leave for a serious health condition. Moreover, the Supreme Court has already held that "the congressional purpose in enacting the self-care provision is unrelated to th[e] supposed wrongs" of "sex discrimination or sex stereotyping in the administration of six leave." *Coleman*, 132 S. Ct. at 1335. The self-care provision "is not unequivocally a 'statute prohibiting discrimination'" within the meaning of the residual clause of § 2000d-7. *Sossamon*, 131 S. Ct. at 1662; *see also Amoroso v. Bucks County Court of Common Pleas*, No. 13-689, 2014 WL 1284791, at *6 (E.D. Pa. Mar. 27, 2014) ("[T]he

FMLA self-care provision is a not a federal statute prohibiting discrimination as contemplated by the catchall provision of the Civil Rights Remedies Equalization Act[,] . . . and does not result in a waiver of . . . sovereign immunity."). Accordingly, the Commonwealth did not waive its sovereign immunity to suits for money damages under the self-care provision of the FMLA. Therefore, I will grant Defendants' motion for summary judgment as to Seeney's FMLA interference claim against the Commonwealth.[11]

## IV. CONCLUSION

For the reasons set forth above, I will grant Defendants' motion for summary judgment in part and deny it in part. I will grant Defendants' motion for summary judgment on Seeney's FMLA interference claim against the Commonwealth. I will deny Defendants' motion for summary judgment on Seeney's ADA and RA claims, and on Seeney's FMLA interference claim against Defendants Michael Wenerowicz, Diana Salkovitz, and Barbara Kalinowsky.

s/Anita B. Brody

______________________________
ANITA B. BRODY, J.

Copies **VIA ECF** on _______ to: Copies **MAILED** on _______ to:

[11] If Seeney would like to seek relief other than monetary damages against the Commonwealth for violating the self-care provision of the FMLA, she may move to do so.